UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                              )
MIR ENTERPRISES, LLC, *et al.*,  )
                                              )   No. C09-1051RSL
                    Plaintiffs,        )
        v.                                 )
                                              )   ORDER REGARDING
CITY OF BRIER, *et al.*,                )   MOTIONS FOR SUMMARY
                                              )   JUDGMENT
                    Defendants.      )
_____)

This matter comes before the Court on "Defendants' Second Motion and Memorandum for Summary Judgment" (Dkt. # 33) and "Plaintiffs' Motion for Summary Judgment" (Dkt. # 36). The parties' presentation of the relevant facts varies markedly. Defendants focus on particular events that occurred between 2001 and 2006 to argue that any delay in the processing of plaintiffs' plat application was reasonable. Plaintiffs, on the other hand, take a much broader view, emphasizing that their original application was filed in 1995 and that it took over a decade to obtain approval for their project. Plaintiffs seek summary judgment on their claim that the delay in processing their application exceeded time limits established by law under RCW 64.40.020 and was arbitrary and capricious under 42 U.S.C. § 1983. Defendants seek dismissal of all claims arising from the processing of the 2001 plat application.

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT

## BACKGROUND

On September 26 1995, plaintiffs applied to the City of Brier for permission to subdivide a 2.5 acre parcel into six single-family residential lots. The City conducted an environmental review and requested additional information regarding an easement on the property. The easement provided access to a neighboring property owned by Randall T. Vanek, and the proposed development would relocate the easement to the other side of plaintiffs' property. Eight months later, plaintiffs obtained and recorded an "Agreement as to Easement" signed by Mr. Vanek on behalf of himself and his deceased wife. At that point, the City's Public Works Superintendent considered the application complete and submitted it to the Brier Planning Commission for public hearing. The City Attorney, however, was not satisfied with either the form or content of the "Agreement as to Easement." Plaintiffs therefore resubmitted the agreement along with a title insurance document. Decl. of Vladan Milosavljevic (Dkt. # 28) at ¶ 8; AR 1539-45. The City Attorney was still not satisfied: he apparently believed that the easement provided access to the City ("be it for public transportation or utilities or similar public uses") and that the City should insist on a title review confirming and guaranteeing the City's access rights. AR 1549. No further action was taken on the 1995 application.

In June 1998, plaintiffs revised their application so that the street serving the proposed subdivision would run along the existing easement. Thus, the location of the easement would remain unchanged, but the surface would be upgraded. Although this revision potentially resolved the City's concerns regarding continuity of access to utilities located in the easement, the City apparently took no action on the 1998 application. In September 1998, Martin L. Krienke and his wife purchased the neighboring property from the bankruptcy estate of Mr. Vanek.

In January 2000, plaintiffs demanded that the City explain in writing what additional steps were necessary to develop the property and the legal basis for each such step. AR 627. In a letter dated January 20, 2000, the City advised plaintiffs that, because the new

street was to be dedicated to the City for public use, both plaintiffs and the beneficiary of the easement had to agree to such dedication. In addition, the City cited RCW 64.04.175 and indicated some confusion about whether the existing easement had been dedicated to public use in the past. AR 195. During the spring of 2000, the City Attorney conferred with plaintiffs' land use attorney regarding the City's desire to avoid litigation and liability that could arise if the plat were approved without protecting the neighbor's right of ingress and egress. AR 452. Although the City Attorney was apparently satisfied with plaintiffs' offer to hold the City harmless, no further action was taken on the 1998 application,

In July 2001, plaintiffs again revised and resubmitted their application, along with a new environmental checklist and preliminary plat application materials.[1] Plaintiffs maintain that the City refused to process the application because of its easement concerns. Decl. of Vladan Milosavljevic (Dkt. # 28) at ¶ 15. In the spring of 2003, the City apparently tried to invalidate the 2001 application for failure to provide requested information within one year. AR 609-10 and 605. After a December meeting with plaintiffs, the City agreed to bring the plat application to hearing before the Brier Planning Commission in the spring of 2004. AR 595. Plaintiffs reached an agreement with the Krienkes regarding the easement in advance of the hearing, and the application was again declared substantially complete. AR 500. The Brier Planning Commission held a second public hearing and recommended approval of the preliminary plat. Decl. of Vladan Milosavljevic (Dkt. # 28) at ¶ 19. Another neighbor, not the Krienkes, appealed the City's environmental evaluation of the project, which took approximately two months to resolve in plaintiffs' favor. AR 430-34.

Plaintiffs' application was again heard by the Planning Commission in September

---

[1] The practical and legal justification for filing a duplicative application is not clear from the record. Plaintiffs allege that they "[f]ear[ed] that the original plat application would expire . . . ." Amended Complaint (Dkt. # 1) at ¶ 32. Defendants, apparently relying on Brier Municipal Code 16.24.015, assert that the 1995 and 1998 applications had expired or become invalid, requiring the submission of a new application and the payment of additional fees.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                   -3-

1  2004, apparently because a record had not been made of the spring 2004 hearing: public
2  testimony was taken for the third time. Decl. of Vladan Milosavljevic (Dkt. # 28) at ¶ 21. At its
3  February 2005 meeting, the City Council determined that plaintiffs would have to redesign their
4  drainage system in order to satisfy concerns raised by the Washington Department of Fish and
5  Wildlife and that additional permits were required. Decl. of Vladan Milosavljevic (Dkt. # 28) at
6  ¶¶ 23-24. At the end of June 2005, Fish and Wildlife approved plaintiffs' proposal to relocate an
7  intermittent stream on the property. AR 668. Because the City had not received confirmation
8  from the Army Corps of Engineers that the project could proceed, consideration of plaintiffs'
9  application was tabled. AR 96-97 and 99. Plaintiffs obtained the Army Corps' approval at the
10 end of November 2005 and notified the City on December 1, 2005. AR 559. The City Council
11 nevertheless declined to consider the application, turning first to a related request for a variance
12 and raising additional environmental concerns related to the location of the sewer lines. AF 91-
13 92.

14       After conducting additional public hearings, the City Council ultimately required
15 plaintiffs to relocate the proposed sewer line from the western side of the lots (where the
16 intermittent stream was located) to the eastern side under the proposed street. Decl. of Vladan
17 Milosavljevic (Dkt. # 28) at ¶¶ 34-35; Decl. of Mayor Bob Colinas (Dkt. # 34) at ¶ 6.b. On
18 April 11, 2006, more than a decade after the application was first submitted, the preliminary plat
19 was approved with significant conditions as set forth in Resolution 476. Plaintiffs filed a land
20 use petition in Snohomish County on May 6, 2006. The state court determined that the City had
21 violated RCW 36.70B.050 by holding numerous open record hearings on the same proposal and
22 that it may have violated the ninety-day limitation of RCW 58.17.140. After reviewing
23 Resolution 476, the state court also struck some of the conditions imposed therein as
24 unsupported. Plaintiffs then amended their complaint to add a claim under 42 U.S.C. § 1983,
25 and the matter was removed to federal court.
26

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                 -4-

## DISCUSSION

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion" (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) and identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" that show the absence of a genuine issue of material fact (Fed. R. Civ. P. 56(c)). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

**B.  42 U.S.C. § 1983**

   **1. Substantive Due Process**

Plaintiffs argue that defendants improperly conditioned consideration of their plat application on the approval of a neighbor. Plaintiffs seek a determination that, as a matter of law, any delay in the processing of plaintiffs' plat application based on the existence of an easement was arbitrary and capricious under the Due Process Clause of the United States Constitution.

Under Washington law, an easement is a right distinct from ownership, such that

the beneficiary of an easement does not possess any ownership interest in the servient estate. City of Olympia v. Palzer, 107 Wn.2d 225, 229 (1986). RCW 58.17.165, which requires a certification from the "owners" of or those with an "ownership interest" in the lands at issue cannot, therefore, be used to justify the City's requirement that plaintiffs obtain approval for the development from the easement holder. See Long v. Naches, 88 Wn. App. 1033, 1997 WL 740747 at *4 (Dec. 2, 1997) (noting that, although approval of the proposed subdivision might give rise to a damages action for trespass, RCW 58.17.110 "specifically prohibits conditioning approval [of the plat application] on the procurement of a release from damages from other property owners"). Nor is RCW 64.04.175 applicable. There is no indication in the record that the private easement benefitting the Vanek/Krienke property was established by dedication.

Apparently recognizing that the statutes on which it relied during the platting process are inapposite, the City now argues that it had a general duty "to assure that private easements which exist for ingress, egress and utilities are not destroyed or rendered insufficient for their stated purposes." Opposition (Dkt. # 39) at 4. The City relies on RCW 58.17.110(2), which states in relevant part:

> A proposed subdivision and dedication shall not be approved unless the city, town, or county legislative body makes written findings that: (a) Appropriate provisions are made for the public health, safety, and general welfare and for such open spaces, drainage ways, streets or roads, alleys, other public ways, transit stops, potable water supplies, sanitary wastes, parks and recreation, playgrounds, schools and schoolgrounds and all other relevant facts, including sidewalks and other planning features that assure safe walking conditions for students who only walk to and from school; and (b) the public use and interest will be served by the platting of such subdivision and dedication. If it finds that the proposed subdivision and dedication make such appropriate provisions and that the public use and interest will be served, then the legislative body shall approve the proposed subdivision and dedication. . . . The legislative body shall not as a condition to the approval of any subdivision require a release from damages to be procured from other property owners.

The City makes no effort to explain how the protection of private easement rights is related to

public health, safety, or general welfare.  While the City could legitimately consider whether the proposed development would be served by adequate infrastructure and how the development would impact the surrounding community, RCW 58.17.110(2) does not authorize the preclusion of development because private easement rights benefitting a single landowner might be adversely affected.  As discussed in Long v. Naches, 88 Wn. App. 1033, 1997 WL 740747 at *4 (Dec. 2, 1997), if the proposed development interferes with an existing easement or causes damage to utilities running through the easement, an action for trespass would be the appropriate remedy.  Rejecting the plat application or, as in this case, refusing to consider it unless and until the easement holder gives his approval does not appear to be an appropriate course of action.  Pursuant to the last sentence of RCW 58.17.110(2), the City was precluded from conditioning approval of the proposed development on plaintiffs' ability to obtain a release from a neighboring property owner.

All of that notwithstanding, the Court is unable to determine, as a matter of law, how much, if any, of the delay suffered by plaintiffs was arbitrary and capricious under the Due Process Clause.  In the land use context, "only egregious official conduct can be said to be arbitrary in the constitutional sense:  it must amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective."  Shanks v. Dressel, 540 F.3d 1082, 1088 (9th Cir. 2008) (internal quotation marks omitted).  In order to succeed on their substantive due process claim, plaintiffs "must show that the City's delays in processing its application lacked a rational relationship to a governmental interest."  North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 485 (9th Cir. 2008).  When determining whether the constitutional line has been crossed, the fact finder should consider "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm."  Plumeau v. School Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).

The delays at issue in this case are, by any measure, extraordinary.  Plaintiffs'

proposed development was not unusually complicated, large, or contentious, and yet it took over a decade to process. Whole years passed with no action on the part of the City, and plaintiffs were forced to address the same issues over and over again throughout the process. The governmental interest identified by defendants – namely the desire to protect a private easement – does not, in fact, justify the delays that occurred. On the other hand, plaintiffs have not identified any non-governmental interest that motivated defendants: no bias, prejudice, or personal animosity is alleged. Defendants have shown that they relied on the advice of counsel when seeking resolution of the easement issue, and the fact-finder could ultimately conclude that such reliance was reasonable even though the advice turned out to be wrong. Sinaloa Lake Owners Ass'n v. City of Simi Valley, 864 F.2d 1475, 1486 (9th Cir. 1989) ("mere errors of judgment, or actions that are mistaken or misguided, do not violate due process").

Based on the evidence in the record, the fact-finder could reasonably conclude that the City acted in good faith when it initially requested information and assurances regarding the easement, but that at some point during the multi-year process, the failure to consider plaintiffs' application on its merits served no legitimate governmental purpose and was thereafter arbitrary and capricious. If that were the case, the fact-finder could then determine what portion of the delay was caused by the improper consideration of the easement rather than other, proper factors. Neither of these issues can be determined as a matter of law on the record presented.

Plaintiffs have also alleged that defendants arbitrarily and capriciously imposed conditions on their permit and charged excessive and unnecessary fees. Amended Complaint (Dkt. # 1) at ¶ 65. Defendants argue that the various conditions and fees were justified by City ordinance and/or circumstances relevant to plaintiffs' permit. Motion (Dkt. # 33) at 11. Plaintiffs did not respond to this part of defendants' motion. The mere fact that certain conditions and fees violated state law does not mean that they were arbitrary and capricious. Sinaloa Lake, 864 F.2d at 1486. Having failed to raise a genuine issue of material fact regarding this portion of their substantive due process claim, judgment in defendants' favor is

appropriate on the constitutional conditions and fee claims.

**2. Procedural Due Process**

The Due Process Clause also provides a guarantee that the government will utilize fair procedures in connection with any deprivation of life, liberty, or property. A "procedural due process claim hinges on proof of two elements: (1) a protectible [sic] liberty or property interest . . . ; and (2) a denial of adequate procedural protections." Thornton v. City of St. Helens, 425 F.3d 1158, 1164 (9th Cir. 2005). In order to have a protectable interest in a government benefit, plaintiffs must have "a legitimate claim of entitlement" to the desired benefit, not merely a "unilateral expectation" or an "abstract need" for it. Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." Wedges/Ledges of Calif., Inc. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir. 1994).

Plaintiffs argue that, once the plat application was deemed complete in 1996, the City was limited to a single public hearing and was required to approve, reject, or return the application within ninety days. Opposition (Dkt. # 41) at 22. Plaintiffs confuse the two elements of a procedural due process claim. Plaintiffs must first show that they had a protectable interest in approval of their application before challenging the procedures used to deny or delay the benefit. Submission of a completed plat application does not give rise to an entitlement under Washington law. Pursuant to RCW 58.17,110, the municipality must inquire into the public use and interest that will be served by a proposed development, determine whether the plan adequately provides for public health, safety, and general welfare, and make written findings regarding these matters. Only after the municipality, in its discretion, makes the necessary findings does state law impose a duty to approve the application. RCW 58.17.110 ("If it finds that the proposed subdivision and dedication make such appropriate provisions and that the public use and interest will be served, then the legislative body shall approve the proposed

subdivision and dedication."). Thus, plaintiffs have not shown a legitimate claim of entitlement to approval of its plat application that could give rise to a protectable property interest under the Due Process Clause.

### 3. Fifth Amendment Takings Claim

Although plaintiffs allege that defendants "have unreasonably seized or taken" their property (Amended Complaint at ¶ 65), they have not opposed defendants request for judgment on this claim. Pursuant to Local Civil Rule 7(b)(2), defendants' motion is deemed to have merit, and plaintiffs' takings claim will be dismissed.

### 4. Claims Against the City Council and Mayor Robert Colinas

Plaintiffs have not responded to defendants' request for judgment on the claims asserted against the Brier City Council and Mayor Colinas. Pursuant to Local Civil Rule 7(b)(2), those claims will be dismissed.[2]

**C. RCW 64.40**

Pursuant to RCW 64.40.020(1):

> Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

Plaintiffs are not arguing that defendants' processing of plaintiffs' plat application was "arbitrary, capricious, unlawful, or [in excess] of lawful authority" under the first prong of RCW 64.40.020. Opposition (Dkt. # 41) at 17. Rather, plaintiffs base their claim for damages on defendants failure to act within time limits established by law. Pursuant to RCW 58.17.140,

---

[2] Plaintiffs did not assert an equal protection claim in their Amended Complaint. The viability of such a claim has not been considered.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                -10-

preliminary subdivision plats must be "approved, disapproved, or returned to the applicant for modification or correction within ninety days from date of filing thereof" unless certain exceptions, not relevant here, apply. Even if one excludes from the calculation periods in which the City was waiting for information from plaintiffs, there can be no genuine dispute that none of plaintiffs' applications was considered, much less resolved, within the statutory period.

Defendants argue that plaintiffs have failed to exhaust their administrative remedies and/or can recover damages only for the period between April 11, 2006 (the date of Resolution 476), and April 23, 2008 (the date the state court granted relief from certain offending conditions contained in Resolution 476). This argument raises a number of issues regarding ripeness, exhaustion, and the accrual of claims under RCW 64.40, most of which have not been resolved by the state courts. Having considered both the statute and the relevant case law, the Court finds that plaintiffs have the better argument in the circumstances presented here.

Plaintiffs' delay claim under RCW 64.40.020 arose when defendants violated the ninety-day time limit imposed by law. Pursuant to RCW 64.40.030, however, the period in which plaintiffs could initiate an action on that claim encompassed only thirty-days after all administrative remedies were exhausted. Washington case law does not expressly identify the appropriate trigger for the thirty-day limitations period when the damages claim is based on an alleged failure to act within time limits specified by statute or regulation. In Smoke v. City of Seattle, 132 Wn.2d 214, 222 (1997), the Washington State Supreme Court determined that "[n]o exhaustion requirement arises . . . without the issuance of a final, appealable order." The court made no distinction between damage claims based on affirmative acts and those based on a failure to act, even though the facts of presented involved periods of delay dating back over a full year. When Mr. and Mrs. Smoke filed suit after many months of unlawful delay, the court found that the limitations period began to run only after the agency issued its final decision. The Washington Court of Appeals, on the other hand, has suggested that the limitations period could begin to run as soon as a failure to act occurs, regardless of whether there is a final agency

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                    -11-

action. Callfas v. Dep't of Constr. and Land Use, 129 Wn. App. 579, 593 (2006).  This portion of the Callfas opinion is dicta:  Mr. and Mrs. Callfas did not allege a violation of the statutory time limits.[3]

As a practical matter, requiring permit seekers to file a RCW 64.40.020 claim for damages as soon as an application remains pending for more than ninety days would result in litigation (or a series of litigations if the delay is extensive) running parallel to an ongoing administrative process.  Such parallel proceedings are both inefficient and impractical.  The agency action being challenged would be unresolved and subject to change even as the judiciary is attempting to evaluate its lawfulness, and the extent and nature of plaintiff's damages would not be established until the administrative process had finally run its course.  The Washington Supreme Court has taken pains to avoid such difficulties when applying RCW 64.40.  In Hayes v. City of Seattle, 131 Wn.2d 706 (1997), the City issued a permit with significant limitations, which the applicant challenged in a judicial action before the King County Superior Court.  As in this case, the conditions were struck and the City issued an appropriate permit.  When the applicant filed an action for damages under RCW 64.40 within thirty days of the City's final act, the Supreme Court deemed the claim timely:

> If we adopted the position advanced by Seattle and approved the reasoning set forth in R/L Associates, [Inc v. City of Seattle, 72 Wn. App. 390 (1994),] persons in Hayes's position would, in order to avoid a potential bar of the statute of limitations, be forced to bring an action for damages before final action on their application had been taken by the administrative agency.  That makes no sense because it would force applicants for permits to file an action for damages before their cause of action was ripe.

Requiring final agency action and the exhaustion of administrative remedies before judicial

---

[3] Nor is it clear how the Callfas court would apply the limitations period had plaintiffs alleged a violation of statutory time limits.  Towards the end of the opinion, the court notes that "a permit applicant like the Callfases would have a claim under RCW 64.40 for delay damages . . . once the tardy permit was issued."  129 Wn. App. at 597.

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT                -12-

review can be obtained is consistent with the statutory provisions and avoids judicial consideration of unripe claims.

In this case, defendants did not issue a decision on plaintiffs' plat application until April 11, 2006. This action was filed three weeks later, on May 6, 2006. Defendants have not identified any administrative remedies that were available to plaintiffs. Thus, plaintiffs timely filed a claim under RCW 64.40.020 within thirty days of the City's final decision.

Defendants argue that, because the City ultimately approved plaintiffs' subdivision (albeit with conditions), the administrative process fully and adequately remedied any unlawful actions occurring prior to April 11, 2006. Motion (Dkt. # 33) at 23. Defendants cite Brower v. Pierce County, 96 Wn. App. 559 (1999), and its progeny as support. In Brower, the applicants were denied an exemption from wetlands review. The Browers administratively appealed the denial and obtained a reversal, allowing the development to proceed. When the Browers sued to recover damages for the period of delay between the initial denial and the reversal on appeal, the court determined that the administrative remedy was adequate and that no cause of action under RCW 64.40.020 arose until the administrative process was exhausted. 96 Wn. App. at 564 and 566.

The Brower analysis makes sense where the alleged delay involves only the time it took for the administrative process to come to a final decision on the merits of a permit application. Where the unlawful delay occurred months or years before the municipality got around to issuing any decision, however, an administrative ruling or reversal would not remedy the wrong. The rule posited by defendants would absolve municipalities of any and all liabilities arising from clear statutory violations as long as the municipality granted the requested permit at the end of the process. Neither common sense nor Washington law supports such a result. The ninety-day limitation was designed to prevent unwarranted delay and demonstrates a clear legislative determination "to hold units of local government within responsible bounds of timeliness in dealing with land use issues." Norco Constr., Inc. v. King County, 97 Wn.2d 680,

ORDER REGARDING MOTIONS
FOR SUMMARY JUDGMENT             -13-

687 (1982). Where an applicant is subjected to unlawful delays in the processing of its application (and not merely the normal delays associated with obtaining administrative review of a timely decision), a favorable but untimely resolution on the merits of the application does not vitiate a claim for damages or otherwise immunize municipalities from the consequences of their unlawful acts.

Plaintiffs have shown that defendants failed to act within the time limits established by RCW 58.17.140. They are, therefore, entitled to summary judgment establishing defendants' liability under RCW 64.40.020.

Plaintiffs have not responded to defendants' request for judgment on the RCW 64.40.020 claims asserted against the Brier City Council and Mayor Colinas. Pursuant to Local Civil Rule 7(b)(2), those claims will be dismissed.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment is GRANTED in part. Plaintiffs' substantive due process claim regarding the imposition of conditions and fees on their permit, their procedural due process claim, and their takings claim are hereby DISMISSED. All claims against the Brier City Council and Robert Colinas are also DISMISSED. Plaintiffs' motion for summary judgment is also GRANTED in part. Plaintiffs have shown that defendants failed to act within the time limits established by RCW 58.17.140, giving rise to liability for damages under RCW 64.40.020. All other requests for judgment are hereby DENIED.

Dated this 15th day of November, 2010.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge